DUEÑO, DEMANDANTE Y APELADO, *v.* DUEÑO, DEMANDADA Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Segunda, en pleito sobre divorcio.

No. 2141.—Resuelto en diciembre 21, 1920.

DIVORCIO POR TRATO CRUEL — CAUSA DE ACCIÓN — ALEGACIÓN DE CRUELDAD QUE FUÉ CONDONADA.—No aduce hechos suficientes para constituir causa de divorcio por trato cruel e injurias graves una demanda de la cual consta que los únicos actos de crueldad que no fueron condonados por el demandante consisten en que habiendo estado éste más o menos enfermo, su esposa dejó de prodigarle cuidados y administrarle los medicamentos.

ID.—ID.—Se ha resuelto casi unánimemente que para constituir una renovación de crueldad que ha sido condonada, no es necesario que las palabras o conducta que después tienen lugar, constituyan causa de divorcio, independientemente del trato cruel anterior, o den derecho al peticionario a una sentencia

de divorcio. La subsiguiente mala conducta puede ser de carácter más leve que la que constituiría la primitiva crueldad, pues el temor de daño será más justamente excitado; pero en cambio se ha resuelto que las mismas consideraciones que sostienen la doctrina de que la condonación es menos fácil de presumirse contra la esposa que contra el marido han dado lugar a que se resuelva que una renovación de crueldad que ha sido condonada se presume menos fácilmente contra ella que contra él.

Los hechos están expresados en la opinión.

Abogados de la parte apelante: *Sres. J. H. Brown* y *M. Acosta.*

Abogado de la parte apelada: *Sr. O. M. Wood.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

La demandada en una moción que presentó para que se anulara la sentencia en rebeldía dictada en un pleito de divorcio alegó primero, que la corte no había adquirido jurisdicción de la demandada y, segundo, que la demanda no aducía hechos suficientes para determinar una causa de acción.

Dicha moción fué denegada y son las mismas las cuestiones que han sido sometidas en apelación. En vista de la conclusión a que hemos llegado en cuanto a la segunda proposición, no es necesario discutir la primera.

La demanda enmendada en cuestión alegaba lo siguiente:

"*Primero.*—Que tanto el demandante como la demandada son mayores de edad, y vecinos de Bayamón, y han vivido por más de un año en la Isla de Puerto Rico, y bajo la jurisdicción de esta corte, antes de la presentación de esta demanda.

"*Segundo.*—Que el demandante y la demandada contrajeron matrimonio en la ciudad de Baltimore, Maryland, el día 25 de octubre de 1903.

"*Tercero.*—Que después de la celebración del matrimonio, ambos cónyuges vivieron en armonia, pero de algunos años a esta parte, la demandada se ha mostrado altanera y desapacible, insultando casi diariamente al demandante, llamándolo entre otras cosas, canalla, indecente, sin verguenza, sucio, criminal, jugador y borracho, en voz alta y en presencia del público.

"*Cuarto.*—Que el demandante proporciona dinero en abundancia para atender a la manutención de la casa y atender a los gastos de

la mesa; pero, la demandada muestra tan poco interés que muchas veces con la idea de atormentar y molestar al demandante no prepara a tiempo los alimentos, tanto de sus hijos, como los del propio demandante; no se cuida de la alimentación de la familia lo que da por resultado que casi siempre los alimentos no son sanos, ni abundantes ni nutritivos, y por el contrario de mala calidad, y tan mal preparados, que dan lugar a frecuentes enfermedades tanto de los niños como de la demás familia.

"*Quinto.*—Que es tal el espíritu y el estado de enemistad de la demandada, que cuando éste demandante, empleando buenas formas, ha tratado de sugerirle, o decirle algo, a fin de que se corrija, la demandada se enfurece y comienza a insultar al demandante, profiriéndole palabras análogas a las predichas, lo que obliga al demandante a salir de la casa agobiado por la lluvia de epítetos que le lanza.

"*Sexto.*—Que no obstante los diversos modos empleados a fin de que la demandada corrija su modo de ser, ella no altera su conducta, con lo que priva al demandante de la paz y armonía de los hogares.

"*Séptimo.*—Que allá por el mes de agosto de 1911 llegó a tal grado de tirantez la situación entre ambas partes, que la demandada atentó contra la vida del demandante haciendo uso de un revólver que afortunadamente amarró fuego.

"*Octavo.*—Que a fines de julio esto es, el día 27 de 1911 agotada ya la paciencia del demandante, y convencido de que no era posible continuar soportando por más tiempo tal género de vida, interpuso demanda de divorcio ante la Corte de Distrito de Mayagüez, la que retiró a principio de septiembre del mismo año, accediendo a los ruegos de la demandada y bajo la promesa solemne de que modificaría su modo de ser, y no se repetirían los altercados que diariamente interrumpían la armonía y tranquilidad de la casa conyugal; pero, no obstante tales promesas la demandada ha vuelto a lo mismo, y hasta puede decirse, que los actos que en el presente ejecuta son más ofensivos y humillantes.

"*Noveno.*—En apoyo de lo anterior se cita el siguiente caso: que habiéndose enfermado de alguna gravedad el demandante, y no encontrando cuidados y atenciones por parte de la demandada, la que se negaba hasta administrarle los medicamentos, tuvo que refugiarse en casa de los padres; y hasta allí le persiguió ella con crueldades, pues en la madrugada del 14 de mayo último·fué a llamarlo con gritos estentóreos, y dirigiéndoles infinidad de imprope-

rios al demandante y a sus padres, a tal extremo que uno de los vecinos salió en busca de un guardia, con lo que logró intimidar a la demandada.

"*Décimo.*—Que de este matrimonio han sido procreados los siguientes hijos: Esmeralda, Braulio, Julia, Tom, Mary y Carmen, de 14, 12, 11, 10, 4 y 1 años de edad respectivamente y no existen bienes gananciales a repartir.

"*Undécimo.*—Que este estado de intranquilidad existente en su hogar, es insostenible, los insultos, falta de alimentación adecuada las molestias y disgustos con que a diario tropieza este demandante, sin causa o razón de ser, han arruinado su salud, y han hecho de su vida un verdadero infierno.

"*Duodécimo.*—Que este demandante siempre se ha comportado como buen esposo y mejor padre, y siempre ha cumplido con todos los deberes que como esposo y padre le corresponden, y creyendo que no puede ni debe de sufrir por más tiempo los vejámenes y vituperios que hasta la fecha ha recibido."

Indudablemente los únicos actos de crueldad que claramente consta que no fueron condonados, como se expresa en la alegación octava, son aquellos de que el demandante se queja en la novena. La vaga manifestación de que el demandante estaba enfermo de alguna gravedad no implica necesariamente que él necesitara ningún cuidado o atención especial por parte de la demandada, o que no pudiera tomar sus medicinas sin ayuda de alguien, ni siquiera que estuviera recluído en cama. Por el contrario el demandante parece haber estado en condiciones no sólo de atender a sus propias necesidades, sino de trasladarse a la casa de sus padres, si bien no consta cuál fuera la distancia recorrida, los medios de traslación empleados, ni la forma en que los utilizó. El período de tiempo transcurrido entre la fecha de su salida y el de la llamada que fué a hacerle la demandada por la madrugada, no ha sido determinado. Qué se dispuso, si alguna disposición se hizo para el sostenimiento y atenciones de la esposa e hijos durante este intervalo en manera alguna se ha tratado de explicar. Y aparte de la presunción, de existir alguna, de que la situación de tal modo creada

continuó así no hay nada que indique la suspensión de las relaciones conyugales.

Por otro lado la demanda en conjunto sí sostiene la conclusión de que por el espacio de unos ocho años y hasta la fecha del incidente referido en la alegación novena, la demandada no había dado a su esposo motivo alguno de queja. Y aparece de la alegación décima que durante este tiempo nacieron dos niños además de los otros cuatro que se enumeran en dicha alegación. El dejar de prodigar atenciones hacia un esposo que se encontraba más o menos indispuesto, o hasta el dejar de administrarle los medicamentos, difícilmente puede considerarse como constitutivo de trato cruel y sin que exista algo más, como justificativo del abandono por parte del marido, de la esposa, hogar e hijos.

"Los actos de crueldad que han sido condonados pueden renovarse por nuevos actos de crueldad con tal que la recrudescencia no haya sido provocada por la conducta ofensiva del peticionario." Nota al caso de *Houghton* v. *Houghton,* B. R. C. 585, p. 664.

Además,

"Se ha resuelto casi unánimemente, que para constituir una renovación de crueldad que ha sido condonada, no es necesario que las palabras o conducta que después tiene lugar, constituyan causa de divorcio, independientemente del trato cruel anterior, o den derecho al peticionario a una sentencia de divorcio. La subsiguiente mala conducta puede ser de carácter más leve que la que constituiría la primitiva crueldad, pues el temor de daño será más justamente excitado." *Idem,* 665.

Pero en cambio,

"Las mismas consideraciones que sostienen la doctrina de que la condonación es menos fácil de presumirse contra la esposa que contra el marido han dado lugar a que se resuelva que una renovación de crueldad que ha sido condonada se presume menos fácilmente contra ella que contra él." *Idem,* 670.

La resolución apelada debe ser revocada.

*Revocada la sentencia.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro y Aldrey.

El Juez Asociado Sr. Wolf firmó conforme con la sentencia.